United States District Court
Southern District of Texas
**ENTERED**
February 27, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALEX Y. KIM, on behalf of Himself and Others Similarly Situated, § § § *Plaintiffs*, § § v. § § UMAMI GRILL & SUSHI, LLC and JENNIFER, ZILLIOX, § § § *Defendants*. § | CIVIL ACTION H-18-850 |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for partial summary judgment filed by defendants Umami Grill and Sushi, LLC (the "Restaurant") and Jennifer Zilliox (collectively, "Umami"). Dkt. 12. Having considered the motion, response, record evidence, and applicable law, the court is of the opinion that Umami's motion for summary judgment should be DENIED.

### I. BACKGROUND

This case is about a sushi chef allegedly not being paid for working overtime. Dkts. 12, 13. He brings this case on behalf of himself and other chefs or cooks responsible for preparing and serving food at the Restaurant. Dkt. 1. Zilliox owns the Restaurant, and plaintiff Alex Y. Kim worked for her. *Id.* Kim contends that his primary duty was preparing sushi meals. *Id.* He asserts that he and the other chefs were paid a salary with no overtime pay and that the chefs regularly worked in excess of sixty hours a week. *Id.* Kim has not filed a motion to certify the class.

Umami filed a motion for partial summary judgment, arguing that Kim was exempt from the Fair Labor Standards Act ("FLSA") overtime requirements under both the bona fide executive exemption and the bona fide professional capacity exemption. Dkt. 12. Umami asserts that Kim

"was not a simple line or prep cook that followed recipes"; rather, he created them. Dkt. 12 (citing Dkt. 12, Ex. B (Zilliox Dec.)). Additionally, Umami asserts that Kim was a manager who managed the sushi department as well as, at times, employees in the front of the Restaurant. *Id.* Umami relies on two unsworn declarations executed by Zilliox to support these contentions. *See id.* & Exs. A, B.

Kim argues that there is a question of material fact that precludes summary judgment as to each exemption. Dkt. 13. First, he contends that he was not paid on a salary basis because his salary fluctuated, and he provides paystubs demonstrating this fluctuation. *Id.* & Ex. 1. Second, he asserts that none of the documents submitted by Umami proves the professional or creative exemptions. Dkt. 13. He argues that Umami negates its own claim that Kim was exempt as a professional by asserting that his primary duty was *both* management and creative design, as both of these cannot be primary duties. *Id.* Finally, Kim objects to Umami's evidence, arguing that the declarations provided are unsworn and are, in part, hearsay, and that exhibits A2 through A10 are irrelevant. *Id.* The court will first consider Kim's evidentiary objections and then turn to Umami's motion for partial summary judgment.

## II. EVIDENTIARY OBJECTIONS

Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Under Rule 56(c)(4), an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Kim first objects to two "unsworn declarations," which he contends are unsworn and self-serving, thus rendering them unreliable as credible summary judgment evidence. Dkt. 13 at 3. Both

2

declarations are made by Zilliox. The first, Exhibit A, purports to prove up business records. Dkt. 12, Ex. A. The declaration is signed but not notarized. *Id.* In Exhibit A, Zilliox states that the facts in the declaration are true and within her personal knowledge. *See id.* She also asserts that she is the custodian of records and that the records attached are original or exact duplicates of the originals. *See id.* She does not, however, state that she is signing the declaration under "penalty of perjury." *See id.*

Under 28 U.S.C. § 1746, an unsworn declaration may be used as evidence if it is subscribed "as true under penalty of perjury, and dated, in substantially the following form: . . . If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." Because Zilliox does not mention "penalty of perjury," her unsworn declaration cannot be used as summary judgment evidence. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."). Kim's objection to this declaration is SUSTAINED.

The other unsworn declaration, Exhibit B, *does* state that it is made "under penalty of perjury." In fact, the first paragraph of the declaration mirrors the language used in 28 U.S.C. § 1746. *See* Dkt. 12, Ex. B. Thus, to the extent Kim objects to the court relying on Exhibit B because it is an unsworn declaration, that objection is OVERRULED.

Kim also objects to specific paragraphs of Exhibit B. He objects to paragraph 2 because it contains a assertion of a material fact that is disputed by evidence. Dkt. 13. In paragraph 2, Zilliox states Kim's employment dates and asserts that he "was compensated on a salary basis at a rate of $1,500 for 11 days of work on a biweekly pay schedule." Dkt. 12, Ex. B ¶ 2. The court takes note

3

of Kim's assertion that he has evidence that conflicts with Zilliox's statement and will consider Kim's evidence when determining whether Umami has met its summary judgment burden, but Kim's allegedly conflicting evidence is not a sufficient reason to strike Zilliox's statement as improper evidence. The objection to paragraph 2 is OVERRULED.

Kim objects to paragraph 3 of Exhibit B because of the "assertion of disputed criterion 'primary duty.'" Dkt. 13. This is not a proper objection. The court will consider all evidence both sides present and if there is an issue of material fact, the court will not grant summary judgment. The objection to paragraph 3 is OVERRULED.

Kim objects to paragraph 7 as irrelevant. Dkt. 13. In paragraph 7, Zilliox states that Kim offered to buy the Grill, his offer was rejected, and then he filed this lawsuit. Dkt. 12, Ex. B ¶ 7. The court agrees that this information is not relevant to the issues being considered for summary judgment. Thus, the objection to paragraph 7 is SUSTAINED.

Finally, Kim objects to Exhibits A2 to A10 as irrelevant. Dkt. 13. The court need not rule on these objections because it does not rely on these exhibits in making its determination.

### III. SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable

to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## IV. ANALYSIS

Under the FLSA, covered employers must compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) of the FLSA creates a cause of action against employers who violate the overtime compensation requirements. 29 U.S.C. § 216(b). There are several categories of employees who the statute specifically exempts from overtime requirements. *See* 29 U.S.C. § 213(a)(1). Relevant to this case, employees who are employed in a bona fide executive or professional capacity are exempt from the overtime requirement. *See id.* The requirements for the executive exemption are contained in 29 C.F.R. § 541.100–06 (Subpart B), and the requirements for the professional exemption are contained in 29 C.F.R. § 541.300–04 (Subpart D). 29 C.F.R. § 541.0. Both exemptions apply to employees compensated on a "salary basis" pursuant to § 541.600, which requires a minimum rate of pay per week that is met by Kim's contractual pay rate. 29 C.F.R. §§ 541.100(a)(1), 541.300(a), 541.600(a); *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2018) (enjoining the implementation of an amendment increasing this minimum from $455 to $913 per week); Dkt. 12 & Ex. B (indicating that Kim's contractual rate of pay was $1,500 for 11 days of work paid on a biweekly schedule). "Salary basis" means, generally, that the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a). There are, however, various exceptions to the prohibition against deductions from pay in the salary basis requirement. *Id.* § 541.602(b).

Umami argues that Kim's salary exceeded the minimum salary required by the exemption. Dkt. 12. Specifically, it asserts that Kim was compensated at a rate of $1,500 for eleven days of work on a biweekly pay schedule. *Id.* (citing Exhibit B).

Kim argues that there is a genuine issue of material fact as to whether he was paid on a "salary basis," which he contends precludes either exemption. Dkt. 13. He asserts that the statute requires more than just being paid at or above the minimum rate in that the employee must receive a full, predetermined salary on a consistent basis to qualify as exempt. *Id.* Kim contends he was not paid on a salary basis because his pay was inconsistent and whether he was paid on a "salary basis" is a question of fact for the jury. *Id.* Kim asserts that sometimes his pay actually fell below the contractually stated $1,500.00 for eleven days of work on a biweekly schedule, and his pay amounts varied from week to week. *Id.* & Ex. 1.

Kim provides his paystubs as evidence of his "regular" pay. For example, on February 4, 2014, Kim was paid a regular rate of $1772.68 for two weeks of work. Dkt. 13, Ex. 1. On February 18, 2014, he was paid $1636.32 for his regular rate, and on March 4, 2014, he was paid $1909.04 as the regular rate.[1] *Id.* He received credit card tips on top of the "regular" rate listed on his pay stubs. *Id.* There are paystubs indicating he was sometimes paid *less* than $1500 for a two-week pay period. For example, there are several paystubs indicating he was paid $1309.05, $1454.50, $1163.60, and $1018.15 as his "regular" rate. *Id.* There is even one indicating he was paid $436.35 as his "regular" rate. *Id.*

Under the regulations, deductions may be made for absences of one or more *full* days. But

---

[1] These fluctuations appear to be for extra days worked, as $1500.00 divided by eleven days, which is his contractual rate, is $136.36. If you add that rate, the amounts paid for regular rates on his pay stub appear to include one or two extra days if he were paid a rate per day rather than a salary.

6

deduction may not be made for partial days. *See* 29 C.F.R. § 541.602(b)(1) ("[I]f an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence."). Some of the regular pay amounts Kim received do not "add up" to full-day absences.[2] While there are exceptions listed in the FLSA that may explain the paystubs in which Kim's pay was reduced by units that are not multiples of a full-day's pay, Umami has provided no explanations here. Thus, there is a question of material fact as to whether Kim was paid on a "salary basis." Because there is a question of material fact as to this element which is an essential element of both exemptions, Umami has not met its burden of showing the exemptions apply. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (noting that when the movant bears the burden of proof on an issue, the movant has the burden of establishing the elements of its claim or defense). Umami's motion for partial summary judgment is therefore DENIED.

## V. CONCLUSION

Umami's motion for partial summary judgment (Dkt. 12) is DENIED.

Signed at Houston, Texas on February 27, 2019.

_____
Gray H. Miller
Senior United States District Judge

---

[2] As noted above, $1500.00 divided by eleven days equates to a daily rate of $136.36. The check indicating Kim's regular rate pay was $436.35 is not a multiple of $136.36, which could lead a reasonable juror could conclude that Kim deductions were being made for partial days.